# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Stephen A. Hodgson,                    Civil File No. 08-5120 (JNE/SRN)

        Plaintiff,

        v.                    **REPORT AND RECOMMENDATION**

Joan Fabian, et al.

        Defendants.
_____

Stephen Hodgson, *pro se*, Minnesota Correctional Facility at Stillwater, 970 Pickett Street North, Bayport, Minnesota 55003.

Angela Behrens, Minnesota Attorney General's Office, Suite 1100, 445 Minnesota St., St. Paul, MN 55101, for Defendants.
_____

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter comes before the undersigned United States Magistrate Judge on Defendants' Motion for Summary Judgment [Docket No. 11] and Plaintiff's Motion to Deny Summary Judgment [Docket No. 33].[1] This case has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons set forth below, the Court recommends that Defendants' motion be granted and Plaintiff's motion be denied.

## I. FACTUAL BACKGROUND

Plaintiff Stephen A. Hodgson, a prisoner at the Minnesota Correctional Facility at Stillwater (MCF-STW), brings this lawsuit under 42 U.S.C. 1983, alleging a variety of Constitutional claims: interference with his rights to freedom of speech; interference with his

_____

[1] Defendant has also moved to strike Plaintiff's response to Defendants' reply memorandum filed in support of Defendants' motion for summary judgment [Docket No. 47]. That Motion will be addressed in a separate Order accompanying this Report and Recommendation.

rights to free exercise of religion; violations of due process and equal protection; and cruel and

unusual punishment. Additionally, Plaintiff raises statutory claims for violation of the Religious

Land Use and Institutionalized Persons Act (RLUIPA) and a claim for conspiracy.

### A. Mail Censorship

### 1. MCF-STW's mail policies

Under MCF-STW's mail and contraband policies, inmates are prohibited from receiving

and possessing sexually explicit materials. DOC Policy No. 301.030, sets forth the DOC's rules

regarding contraband. The policy defines sexually explicit material as:

1. all materials that contain pictorial depictions of sexual activity;
2. published materials featuring nudity or written depictions of sexual activity, unless such depictions illustrate medical, educational, or anthropological content;
3. non-published materials that contain pictorial depictions of nudity (including but not limited to pictures, photographs, internet printings, and drawings); and
4. non-published materials containing written depictions of sexual activity that, based on an individualized review, are determined to constitute a risk to the safety and security of the facility, facilitate criminal activity, or undermine offender rehabilitation; but
5. excluding materials issued by facility treatment staff to an offender currently participating in a sex offender treatment program.

Id. Nudity is defined in the policy as "the showing (including a see-through covering) of human

male or female genitals, anus or pubic area or the showing (including a see-through covering) of

the female breast or a substantial portion of the breast below the top of the nipple." Id.

When an inmate's mail is confiscated, the inmate is issued a notice of non-delivery of

mail/package. If an inmate wishes to challenge the confiscation of his or her mail, the inmate

must first appeal the decision to the mailroom supervisor, currently Defendant Mary Perez. If

the supervisor denies the appeal and upholds the non-delivery, the inmate may appeal to the

correspondence review authority, currently Defendant David Reishus. Inmates may not use the

grievance process to appeal the denial of mail.

### 2.    Confiscation of Plaintiff's Mail

Plaintiff, a member of the Wiccan faith, subscribed to a monthly Wiccan e-magazine called the Magickal Light, published by an organization known as the Magicka School.  On or around April 1, 2008, Plaintiff's spouse downloaded and mailed Plaintiff a copy of Magickal Light.  Upon receipt of the magazine at MCF-STW, individuals in the mail room confiscated four pages of the magazine.  On the notice of non-delivery of mail/package, the mailroom indicated that three pages of the magazine were confiscated for containing sexually explicit material and one page was not delivered for depicting "witchcraft items (knives)."  Plaintiff appealed the confiscation of these pages, stating that two of the sexually explicit images were art statutes, (one located in the Louvre and one a frieze on the Parthenon), the third was a drawing of a Wiccan deity, and the image of the knives was part of an advertisement for athame (a ceremonial double-edged dagger used in Wiccan religious services).  Plaintiff also asserted in the appeal that these items and images were tools of his religion.  Defendant Perez upheld Plaintiff's appeal and allowed Plaintiff to have the images.

The next month, on or about June 10, 2008, the mailroom received Plaintiff's copy of the June issue of Magickal Light.  Once again, a page of the magazine depicting a museum painting of a Wiccan goddess was confiscated as containing sexually explicit material.  Plaintiff appealed the denial of this material to Defendant Perez, who denied the appeal because the image contained "full-frontal nudity."  Plaintiff then appealed the decision to Defendant Reishus.  After consulting with MCF-STW's religious coordinator, Reishus allowed Plaintiff to have the photo because of its religious significance.

In or around July 2008, Plaintiff and other Wiccans at MCF-STW began planning their religious celebration, Lammas, to honor the Goddess Ceres and the God Saturn.  To aid in the

preparations, Plaintiff's wife downloaded information from the internet about Ceres and Saturn and sent the information to Plaintiff. On July 22, 2008, the mailroom confiscated six pages of that information as sexually explicit material. The materials included four pages with museum paintings or statutes of nude figures (an engraving by Renaissance artist Giovanni Jacopo Caragilo, and other artworks located in the Louvre, the Ashmolean museum at the University of Oxford, and the Glypoththek museum in Munich). The last two pages that were confiscated were pure text without any images or any descriptions of a sexual nature. Plaintiff again appealed the confiscation of the material to Defendant Perez who upheld the appeal, allowing Plaintiff to have the materials.

After Plaintiff filed his Complaint in this matter, in or around September, 2008, Plaintiff's wife mailed him additional copies of the four pages containing the sexually explicit images confiscated in July, for Plaintiff to use in the instant litigation. The mailroom again confiscated the images and Plaintiff filed another appeal noting that he was previously approved to have the materials in July 2008. Defendant Perez upheld the appeal and allowed Plaintiff to have the images, stating "[t]he photos do not violate policy."

Plaintiff also filed offender kite forms to grieve the mailroom's confiscation of the various images. The grievances were repeatedly denied because the policy is clear - the appeal of mail issues is to go to the correspondence review authority, not through the grievance process.

In response to Defendants' motion for summary judgment, Plaintiff alleges that he has ceased purchasing and obtaining copies of the Magickal Light magazine because of their repeated confiscation.

## B.     Smudging and Incense

Plaintiff alleges that Defendants have impeded his right to freedom of religion and discriminated against his religious beliefs by not allowing him and the Wiccan group at MCF-STW to smudge or burn incense in the prison chapel.  In response to Defendants' motion, Plaintiff submitted an affidavit explaining the importance of smudging and using incense in Wiccan religious services and that not being allowed to smudge or burn incense diminishes his ability to practice his faith.  Plaintiff alleges that, as part of Wiccan religious services, practitioners place small amounts of ceremonial sage or other herbs on a piece of charcoal and use the resulting smoke to cleanse their bodies, their altar, and the worshipping area.  Plaintiff also alleges that, in the Wiccan religion, small sticks of religious incense are lit to "combine the elements of air and fire."  The smoke and energy released from the incense is then given as an offering and prayer to Wiccan deities, and to bless the altar, religious tools, and Wiccan practitioners.  In addition, in response to Defendants' motion, Plaintiff submitted affidavits from two other Wiccan inmates, Brad Yost and Scott Butterfield, explaining how the inability to smudge or burn incense burdens their religious practices.

Defendant Father Gregory Skrypek, a catholic priest and a religious coordinator at MCF-STW, attended a meeting of the Department of Corrections (DOC) Religious Practices Committee (RPC) in or around the fall of 2007.  At that meeting, Father Skrypek learned that MCF-STW was the only Minnesota prison to permit smudging or burning of incense indoors. After the RPC meeting, Father Skrypek informed Defendant Regina Stepney, MCF-STW's Unit Director, that other Minnesota correctional facilities did not allow smudging or the burning of incense indoors.

On October 29, 2007, in a memorandum regarding "smudging/salat," Defendant John King, Associate Warden at the time of these events, notified inmates that smudging ceremonies would no longer be allowed as of the end of the month but that "[i]f an outside resource person becomes available we will review resuming those ceremonies." Although the policy provides that inmates can smudge with an outside person present, Defendants assert that, in practice, MCF-STW interprets the policy to prohibit all smudging indoors, even when an outside religious resource is present. (Affidavit of John King at ¶ 10). Likewise, Defendants assert that burning incense also became prohibited under the "smudging/salat" policy. Inmates are allowed, however, to smudge and burn incense outdoors. Defendants contend that the policy change was necessary to bring MCF-STW into compliance with other correctional facilities, to minimize the risk of fires, and to limit discord among other inmates who might be bothered by the smoke smell. Because the Wiccan group was no longer allowed to use incense or smudge, the group was provided with an infuser filled with oil to provide a fragrance during religious services. Inmates are also allowed to burn candles during religious services.

### C.    Herbs and Prayer Oils

Prior to 2001, Native Americans were allowed to possess five herbs for religious/spiritual purposes: sage, sweetgrass, cedar, bear root, and bitter root. In 2001, one of the pagan groups within the Minnesota DOC asked for the ability to use and possess religious herbs. The DOC allowed the pagan group and other religious groups to order and possess religious herbs and did not limit these groups to the five herbs that the Native Americans were authorized to use. Instead, the DOC imposed limits on the total number of herbs that could be ordered by an inmate at one time, required that the herbs fit in a sandwich bag, and prohibited herbs that came with warnings of possible medical problems or which could be an aphrodisiac.

In early 2007, the RPC and entities at various MCF facilities began to have concerns about inmate herb ordering and use. Defendants contend that the use and possession of herbs presents a number of safety and security risks. Some herbs have hallucinogenic properties or can be harmful to an inmate's health. Additionally, some herbs caused canine officers in the prisons to falsely alert to drugs.

Because of these concerns, at a meeting in 2007, the RPC recommended that the DOC establish clearer policies regarding the possession and ordering of religious herbs. A subcommittee was formed to review the use of herbs in DOC facilities and make recommendations on a new policy. In formulating the policy, the RPC consulted other prisons on their policies, and considered medical risks, inmate requests, and input from religious volunteers. The subcommittee polled pagan religious groups as to which herbs were most commonly used in each faith. In May of 2008, the DOC adopted a new policy that limited the herbs that inmates could order to a list of ten herbs. At the same time, the DOC expanded the number of teas available at the prison canteen. The ten herbs were selected based on which herbs had the highest rate of interest by pagan groups across all DOC facilities. The policy also put a two-ounce limit on individual herbs to reduce the medical risks associated with higher quantities of herbs. Finally, the new policy restricted the number of approved vendors from whom inmates were allowed to order. The purpose of limiting the number of approved vendors was to ensure the vendors were reputable and to lessen the possibility that contraband could enter the facility.

Plaintiff challenges the constitutionality and legality of the new herb policy. Plaintiff asserts that Wiccans believe herbs are sacred gifts from the gods, have the ability to heal the body and soul, are used to commune with ancestors and gods, are used to bless and protect

religious items and Wiccan practitioners, and are used to celebrate Wiccan religious holidays. Plaintiff also contends that, because specific herbs are used to worship different deities, the new herb policy limits which deities Wiccan practitioners can worship. In response to Defendant's motion for summary judgment, Plaintiff provided excerpts from Wiccan texts describing which herbs are associated with which deities and the importance of herbs in the Wiccan faith. Additionally, inmates Yost and Butterfield discussed in their affidavits the use of herbs in Wicca and the burden the policy places on their religious practice.

In addition to disputing the legality of limiting the number and amount of herbs an inmate can possess, Plaintiff also challenges the new herb policy because a specific vendor, Mountain Rose Herbs, is not an approved vendor. Plaintiff wishes to order herbs from Mountain Rose Herbs because they provide kosher and organic herbs and Plaintiff "believes that organic herbs are pure, being free of chemicals that d[i]minish their potency and effectiveness."

With respect to prayer oils, inmates are allowed to use prayer oils during religious services in the chapel area, but inmates are not allowed to keep prayer oils in their cells.

## II.    DISCUSSION

### A.    Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A non-moving party cannot rely on the "mere existence of some alleged factual dispute between the parties [to] defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). "[R]egardless of whether the moving party

accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then Rule 56 requires the entry of summary judgment in favor of the moving party. Id. at 322-23. All evidence will be viewed in the light most favorable to the nonmoving party. Qamhiyah v. Iowa State Univ. of Sci. & Tech., 566 F.3d 733, 741 (8th Cir. 2009).

## B. Eleventh Amendment Immunity

Defendants assert that they are entitled to immunity under the Eleventh Amendment to the extent Plaintiff seeks damages against them in their official capacities. This Court agrees that Defendants are immune from suit in their official capacities with respect to Plaintiff's claims under 42 U.S.C. § 1983. However, in light of a split in the circuits as to whether Eleventh Amendment immunity prohibits a claim for damages under RLUIPA, this Court will instead address that claim on its merits.

### 1. Constitutional Claims

To the extent Plaintiff's Complaint asserts claims against the Defendants in their official capacities under 42 U.S.C. § 1983, the claims must be dismissed. The Eleventh Amendment grants a state immunity from suits brought in federal court by its own citizens, as well as citizens of another state. U.S. Const. Amend. XI; Edelman v. Jordan, 415 U.S. 651, 662-63, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 (8th Cir. 1999). A state, however, can waive its Eleventh Amendment immunity. Alsbrook, 184 F.3d at

1005.  A suit against a government official in his or her official capacity is considered a suit against the entity of which the officer is an agent.  Baker, 501 F.3d at 925 (citing Monell v. Dep't of Social Services, 436 U.S. 658, 690 n. 55, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978).  The law is clear that, "the real party in interest in an official capacity suit is the governmental entity and not the named official."  Baker, 501 F.3d at 925 (quoting Hafer v. Melo, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1999)).

Plaintiff's Amended Complaint alleges violations of 42 U.S.C. § 1983, the federal civil rights statute that allows citizens to seek relief for alleged violations of their federal constitutional rights.  It is well-settled that in a 42 U.S.C. § 1983 action, the Eleventh Amendment precludes an award of money damages against a state official acting in his or her official capacity.  Will v. Mich. Dept. of State Police, 491 U.S. 58, 66-67, 109 S. Ct. 2304, 105 L.Ed.2d 45 (1998); Edelman, 415 U.S. at 662-63; Larson v. Kemper, 414 F.3d 936 (8th Cir. 2005).  A plaintiff may maintain an action against a government official if the complaint seeks only injunctive or prospective relief.  Edelman, 415 U.S. at 663; Grand River Enterprises Six Nations, Ltd. v. Beebe, 467 F.3d 698, 701-02 (8th Cir. 2006).

The State of Minnesota has not waived its immunity and consented to be sued in this case.  Plaintiff's prayer for relief seeks both monetary damages and injunctive relief.  (Complaint, Docket No. 1 at p. 20).  Under the Eleventh Amendment, Plaintiff cannot maintain his section 1983 action against the Defendants in their official capacities to the extent he is seeking damages.  Therefore, to the extent Plaintiff asserts § 1983 damages claims against Defendants in their official capacities, it is this Court's recommendation that Defendants' motion for summary judgment be granted.

## 2. RLUIPA

It is an open question in this Circuit whether Eleventh Amendment immunity applies to claims for damages under RLUIPA. Some courts have held that Eleventh Amendment immunity prohibits RLUIPA claims for damages against a state. Sossamon v. Lone Star State of Texas, 560 F.3d 316, 331 (5th Cir. 2009); Cardinal v. Metrish, 564 F.3d 794, 801 (6th Cir. 2009); Scott v. Beard, 252 Fed. Appx. 491, 492-93 (3d Cir. 2007); Madison v. Virginia, 474 F.3d 118, 133 (4th Cir. 2006). Other courts have held that a state waives its Eleventh Amendment immunity in suits brought under the RLUIPA by the state's acceptance of federal funds. Benning v. Georgia, 391 F.3d 1299, 1305–08 (11th Cir. 2004); Charles v. Verhagen, 348 F.3d 601, 608 (7th Cir. 2003); Mayweathers v. Newland, 314 F.3d 1062, 1067 (9th Cir. 2002), cert. denied, 540 U.S. 815, 124 S. Ct. 66, 157 L. Ed. 2d 30 (2003). The Eighth Circuit has not addressed this issue, although the issue is currently pending before the Court in Sisney v. Reisch, 533 F. Supp. 2d 952 (D.S.D. 2008), No. A08-1413 (8th Cir. filed Feb. 20, 2008). As set forth *infra*., the Court does not need to resolve whether Eleventh Amendment immunity applies to the state on Plaintiff's RLUIPA claims, because those claims fail on the merits.

## C. Freedom of Speech

Because of the censorship of his mail, Plaintiff alleges that MCF-STW has unconstitutionally interfered with his freedom of speech. The Court is troubled that Defendants do not address Plaintiff's freedom of speech claims in their memorandum in support of summary judgment. While this Court believes Defendants' actions in censoring Plaintiff's mail would violate the First Amendment, because Plaintiff eventually received all of the confiscated mail, his claims are moot.

1.      **Reasonable Relationship Test**

When resolving the constitutionality of prison policies and actions, courts must balance the rights of the prisoner with the institutional needs of the prison. "It is fundamental that prison administrators are accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Falls v. Nesbitt, 966 F.2d 375, 379 (8th Cir. 1992). On the other hand, "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." Thornburgh v. Abbott, 490 U.S. 401, 407, 109 S. Ct. 1874, 1878, 104 L. Ed. 2d 459 (1989). Therefore, prisoners must be accorded those rights which are not fundamentally inconsistent with imprisonment itself or incompatible with the objects of incarceration. Turner v. Safley, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). A prisoner's constitutional rights, however, may be limited in order to further legitimate objectives of the penal system. Id. "Although courts are reluctant to interfere with prison administration, allegations of deprivation of first amendment rights must be scrutinized carefully." Valiant-Bey v. Morris, 829 F.2d 1441, 1443 (8th Cir. 1987).

When determining whether a prison regulation is constitutional, a court must decide if the regulation is reasonably related to legitimate penological interests.[2] Turner, 482 U.S. at 89; Ortiz v. Fort Dodge Corr. Fac., 368 F.3d 1024, 1025 (8th Cir. 2004); Williams v. Brimeyer, 116 F.3d 351, 354 (8th Cir. 1997). Constitutional claims that would otherwise be evaluated under a strict scrutiny analysis if raised by a member of the general public, are evaluated under a lesser

---

[2]    In Procunier v. Martinez, 416 U.S. 396, 94 S. Ct. 1800, 40 L. Ed. 2d 224 (1974), the Supreme Court's original decision regarding prisoner mail, the Court applied a strict scrutiny test to all restrictions on prisoner correspondence. However, in Turner and Thornburgh, the Court retreated from the Martinez test and adopted the more deferential "reasonably related" standard.

standard of scrutiny in the prison context. <u>Murphy v. Mo. Dept. of Corr.</u>, 372 F.3d 979, 982 (8th Cir. 2004) (<u>Murphy II</u>). In <u>Turner</u>, the Supreme Court identified several factors that a court should analyze to determine if a regulation is reasonably related to legitimate penological interests. <u>Turner</u>, 482 U.S. at 89. The factors a court should consider include: (1) whether there is a rational connection between the restriction and the legitimate government interest used to justify it; (2) whether alternative avenues of exercising the right remain open to the inmate; (3) whether accommodation of the right will have an adverse impact on guards, other inmates, or prison resources generally; and (4) whether obvious, easy alternatives to the restriction exist. <u>Id.</u> at 89-90.

The <u>Turner</u> analysis applies equally to facial and as-applied constitutional challenges. <u>Bahrampour v. Lampert</u>, 356 F.3d 969, 975 (9th Cir. 2004). When an inmate challenges the constitutionality of a prison's denial of a specific piece of mail, the question for the court is whether a ban on the particular items is reasonably related to legitimate penological objectives. <u>Brimeyer</u>, 116 F.3d at 354 (citing <u>Turner</u>, 482 U.S. at 90). A valid neutral regulation may be invalid if it is applied to particular mail items in a way that negates legitimate concerns. <u>Murphy II</u>, 372 F.3d 396 (citing <u>Thornburgh</u>, 490 U.S. at 419). "In considering this question, we must decide . . . whether the regulation is . . . an exaggerated response to prison concerns." <u>Id.</u> (citing <u>Salaam v. Lockhart</u>, 905 F.2d 1168, 1171 (8th Cir. 1990)); <u>see also</u> <u>Weiler v. Purkett</u>, 137 F.3d 1047, 1050 (8th Cir. 1998).

In <u>Murphy II</u>, the Missouri Department of Corrections reviewed questionable or "close-call" mail items with a three-person censorship panel. <u>Murphy II</u>, 372 F.3d at 986. The Eighth Circuit reversed a grant of summary judgment for the defendant with regard to Plaintiff's challenge to an application of the prison's censorship policy. <u>Id.</u> The Court held the defendant

was not entitled to summary judgment because the prison's documented reason for censoring the item was "too conclusory to support a judgment in favor of the prison." Id. The court went on to state, "[s]ummary judgment would only be appropriate if [defendant] presented some specific evidence of why this particular item implicates prison concerns." Id.

Applying the factors set out in Turner, this Court concludes that Defendants' application of the contraband and mail policies to Plaintiff's mail was an unconstitutional violation of Plaintiff's right to freedom of speech.[3] Defendants assert that prohibiting sexually explicit images from a level-four prisoner is reasonably related to protecting security and promoting rehabilitation. Specifically, Defendants contend that sexually explicit images can cause inmates to be disruptive and "act out" and access to sexually explicit materials would undermine the rehabilitation of inmates who were sex offenders. While these are reasonable and legitimate rationales for the policy, the application of the policy to Plaintiff is "an exaggerated response to prison concerns." Every time that Plaintiff appealed the mail confiscation he was granted the materials. Defendants conceded that it was "erroneous" to prohibit Plaintiff from receiving one of the pictures and later stated that the other photos "do not violate policy." It is very troubling that Defendants confiscated two pages of material that were not covered by the contraband policy in any way because they did not have any photos or images and did not contain any words or descriptions of a sexual nature. While isolated incidents of mistaken censorship do not rise to the level of a constitutional violation, Ping v. Raleigh, No. 98-2739, 205 F.3d 1347, 2000 WL 59539 (8th Cir. Jan. 24, 2000) (table decision) (citing Gardner v. Howard, 109 F.3d 427, 431 (8th Cir. 1987)), Defendants confiscated materials that they admit "do not violate policy" even after Plaintiff filed this lawsuit and even though Plaintiff was allowed to have the same images

---

[3] The Court does not read Plaintiff's Complaint as asserting a facial challenge to the contraband policy, and therefore the Court will not address the constitutionality of the policy itself.

previously. Given that Defendants conceded the confiscated materials did not violate the contraband policy, prohibiting those particular items is not reasonably related to legitimate penological objectives. As set forth below, however, because Plaintiff has now received the confiscated items, the issue is moot.[4]

### 2. Mootness

Defendants contend that all of Plaintiff's claims related to the censorship of his mail are moot because once he appealed the mail confiscation he was permitted to have the items a few days later. This Court agrees. In order for a federal court to have jurisdiction over a case, there must be a live case or controversy at the time the case is decided. U.S. Const. art. III, § 2. Hempstead County Hunting Club, Inc. v. Southwestern Elec. Power Co., 558 F.3d 763, 767 (8th Cir. 2009); In re Paulson, 276 F.3d 389, 391 (8th Cir. 2002). When a prisoner is no longer subjected to an allegedly unconstitutional policy, the prisoner's claims for declaratory and injunctive relief are moot. Pratt v. Corr. Corp. of Am., 267 Fed. Appx. 482, 2008 WL 612571, *1 (8th Cir. 2008) (table decision) (concluding inmate's § 1983 claims for declaratory and injunctive relief were moot when he was transferred to another facility and was no longer subject to alleged unlawful conditions); Smith v. Hundley, 190 F.3d 852, 855 (8th Cir. 1999) (same); Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) (holding prisoners' First Amendment claim for injunctive relief was moot where prisoners eventually received confiscated books, but concluding claim for damages was not moot).

While this Court must construe Plaintiff's Complaint liberally because he is proceeding pro se, nevertheless this Court reads the Complaint as seeking only injunctive and declaratory relief for Plaintiff's free speech claims. While Plaintiff's prayer for relief seeks compensatory

---

[4] The Court notes that if in the future Defendants confiscate similar materials that do not violate the contraband policy, Plaintiff may very well be able to establish a constitutional violation for damages.

damages for violations of Plaintiff's First Amendment rights, he asks for that relief based on Defendants' burdening of his religion, not for violation of his right to free speech. (Complaint at 20-21). For example, Plaintiff seeks $5,000 in damages in Count II of the Complaint for "each separate and individual page confiscated of his *Wiccan religious and educational material*." (Complaint at 21, emphasis supplied). Given that Defendants ultimately allowed Plaintiff to have the confiscated materials, this Court cannot grant Plaintiff the injunctive or declaratory relief he seeks and the claims are moot.

### D. <u>Due Process</u>

In Count IV of the Complaint, Plaintiff asserts that Defendants violated his due process rights because he was not allowed use of the grievance process to appeal the mailroom decisions denying him his religious mail. Defendants assert that this Court should grant summary judgment on this claim because MCF-STW's mail polices comply with the due process standards required for confiscation of prisoner mail. This Court agrees.

In <u>Procunier</u>, the Supreme Court stated "[t]he interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment." <u>Procunier</u>, 416 U.S. 396, at 417 (overruled on other grounds as set forth *supra*.). The Court therefore ruled that a prison's decision to censor a particular mail item "must be accompanied by minimum procedural safeguards." <u>Id.</u>; <u>Bonner v. Outlaw</u>, 552 F.3d 673, 676 (8th Cir. 2009). To satisfy due process under <u>Procunier</u>, a prisoner must: be notified of the mail censorship; be given a reasonable opportunity to protest the decision; and be given an opportunity to appeal the decision to a prison

official who was not involved in the original censorship decision.  Id.; Murphy v. Mo. Dept. of Corr., 814 F.2d 1252, 1258 (8th Cir. 1987) (Murphy I).

Although Plaintiff was not permitted to use the grievance procedure to appeal the censorship of his mail, MCF-STW's mail policy adheres to the procedural safeguards outlined in Procunier.  The record reflects that Plaintiff always received notices when his mail was withheld and the notices indicated the reasons the items were considered contraband.  Plaintiff was allowed to provide reasons why he should be able to possess the censored items.  Further, he was allowed to appeal the mail censorship to multiple levels and to people who were not involved in the original censorship decisions.  The mail policy complies with the minimum procedural safeguards required for due process and it was not necessary for Defendants to provide Plaintiff with an additional means to redress the censorship of his mail.  As such, it is this Court's recommendation that Defendant's Motion for Summary Judgment be granted on Plaintiff's due process claim.

### E.      Freedom of Religion

Plaintiff asserts that Defendants violated his right to exercise his religion under the First Amendment and RLUIPA.  This Court recommends that Defendants' motion for summary judgment be granted with respect to Plaintiff's religious claims under RLUIPA and the First Amendment because either Plaintiff has not established Defendants' actions substantially burdened his religion or the Defendants' policies satisfy the strict scrutiny test applied to RLUIPA claims.

By enacting RLUIPA, the legislature created a statutory free exercise claim with a higher standard of review than that which applies to First Amendment free exercise claims.  Murphy II, 372 F.3d at 986.  In RLUIPA claims, a court still must give deference to prisons in establishing

policies and regulations.  Id. at 987.  However, a court applies a strict scrutiny test to RLUIPA

claims.  Cutter v. Wilkinson, 544 U.S. 709, 714 (2005).  The Act provides:

> No government shall impose a substantial burden on the religious
> exercise of a person residing in or confined to an institution . . .
> even if the burden results from a rule of general applicability,
> unless the government demonstrates that imposition of the burden
> on that person –
>> (1) is in furtherance of a compelling governmental interest; and
>> (2) is the least restrictive means of furthering that compelling
>>     governmental interest.

42 U.S.C. § 2000cc-1(a).  Religious exercise under the Act includes "any exercise of religion,

whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-

5(7)(A).

In Murphy II, the Eighth Circuit ruled that, to constitute a substantial burden, the

government policy or action must:

> significantly inhibit or constrain conduct or expression that
> manifests some central tenet of a person's individual religious
> beliefs; must meaningfully curtail a person's ability to express
> adherence to his or her faith; or must deny a person reasonable
> opportunities to engage in those activities that are fundamental to a
> person's religion.

Murphy II, 372 F.3d at 988 (citing Weir v. Nix, 114 F.3d 817, 820 (8th Cir. 1997)).  Contrary to

Defendants' arguments, Plaintiff does not need to show that the form of religious expression he

was denied was "central" to his religious beliefs.  Since Murphy II was decided, the Supreme

Court has clarified that RLUIPA prohibits inquiry into whether a particular belief or practice is

central to a prisoner's religion.  Cutter, 544 U.S. at 725; Gladson v. Iowa Dept. of Corr., 551

F.3d 825, 833 (8th Cir. 2009).  Because of this change in the law, the Eighth Circuit has found

that the portions of the definition of substantial burden in Murphy II requiring a religious belief

to be a central tenet or fundamental to the prisoner's religion do not apply to a RLUIPA claim.

Id.; Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 813 n. 7 (8th Cir. 2008). If the prisoner fails to put forth sufficient evidence that his ability to practice his religion has been substantially burdened, then the court need not apply the Turner test to the free exercise claim or the strict scrutiny test to the RLUIPA claim. Gladson, 551 F.3d at 833.

A court analyzing an inmate's claim of a violation of his First Amendment right to the free exercise of religion first determines the threshold issue of whether the challenged government action infringes upon a sincerely held religious belief. Murphy II, 372 F.3d at 983. Whether a belief is a "sincerely held religious belief" is a factual question, which a court "must not quickly dismiss . . . on summary judgment by concluding that those beliefs are not genuine." Id. If this threshold test is met, the court then applies the Turner factors to determine if the regulation restricting the religious practice is reasonably related to legitimate penological interests. Id. A prison is not required to provide an inmate with his preferred means of practicing his religion, so long as he is afforded sufficient means to do so. Id. If a court determines a prison's policy or regulation is constitutional under RLUIPA, the regulation also is constitutional under the First Amendment because RLUIPA offers greater protection to religious exercise than the First Amendment offers. Smith v. Allen, 502 F.3d 1255, 1264 (11th Cir. 2007); Charles v. Frank, 101 Fed. Appx. 634, 635 (7th Cir. 2004).

### 1. Mail Censorship

After Defendants filed a reply to this motion, Plaintiff filed a "Response to the Defendants' Reply Memorandum," setting forth arguments regarding, *inter alia.*, the ways that Defendants' actions substantially burdened the practice of Plaintiff's religion. (Pl.'s Resp. to the Defs.' Reply Memo. of Law Supporting Mot. for Summ. J. for Defs.', hereinafter "Pl.'s Resp. to

Reply").[5]  With respect to mail censorship, Plaintiff alleged that his religion was substantially burdened because "Plaintiff is unable to gain information about his religious deities so that he can better serve and honor the gifts they have given humanity, which is an important part of his religious beliefs." (Id. at 4).  This statement is insufficient to establish a substantial burden on Plaintiff's religion.  Plaintiff was only denied the items for a few days and he eventually received all of the information he sought to educate himself about his deities.  Plaintiff has not alleged how a delay of a few days significantly constrained his ability to express his religion or engage in religious activities.  Because Plaintiff has not satisfied the threshold issue of showing a substantial burden to his religion, this Court does not need to apply the RLUIPA or Turner tests to his claim.[6]

### 2.  Smudging and Incense

Even if the policy banning smudging and burning incense indoors substantially burdens Plaintiff's religion, the Court concludes nevertheless that the policy survives the strict scrutiny test under RLUIPA.  Defendants assert that the MCF-STW's policy prohibiting smudging and burning incense indoors furthers compelling government interests in protecting the safety and security of the prison and inmates by reducing the chance of fires and by limiting discord among other inmates who might be bothered by the smoke smell in communal areas.  Institutional

---

[5]   Defendants have moved to strike this pleading because neither the Federal Rules of Civil Procedure nor the local rules of this Court permit such a pleading.  As set forth in the accompanying order, the Court has denied Defendants' motion.

[6]   The Court notes however, that if it applied RLUIPA's strict scrutiny test to Plaintiff's claims regarding mail censorship, Defendants' motion would likely fail.  Defendants only argued what compelling interests the prison had in general censorship of sexually explicit materials.  But Plaintiff is not only asserting a facial challenge to the policy, but also an as-applied challenge to the Plaintiff's censored images.  Defendants have not set forth how the government has a compelling interest in censoring these images, which Defendants admit Plaintiff was allowed to have under their own policies.  Further, there are less restrictive means of accommodating Plaintiff's interests, such as having a panel review questionable or "close calls" mail decisions without first withholding the item and forcing Plaintiff to appeal the matter.

security is the most compelling interest in a prison setting.  <u>Thornburgh</u>, 490 U.S. at 418; <u>Murphy II</u>, 372 F.3d at 983 (citing <u>Goff v. Graves</u>, 362 F.3d 543, 549 (8th Cir. 2004)).  Plaintiff asserts that the prison's interest in preventing fires is baseless because there is no evidence a fire has ever occurred in the prison due to smudging or incense burning.  Defendants, however, do not have to wait until an incident occurs in order to support a prison policy or decision.  <u>Murphy II</u>, 372 F.3d at 988.  The Court concludes that Defendants have satisfied the compelling governmental interest prong of the strict scrutiny test.

The question of whether Defendants' policy is the least restrictive means of furthering those compelling interests is a closer question.  Previously, Defendants allowed inmates to smudge indoors as long as an outside resource person was present.  This was a less restrictive means of accomplishing the prevention of fires.  Defendants have not articulated any reason that this procedure would no longer accomplish the goal of preventing fires.  Instead the policy change was made solely because other correctional facilities in Minnesota did not allow smudging indoors.  However, allowing smudging indoors with an outside resource person present does not satisfy the prison's other compelling interest of preventing discord among inmates who might be bothered by the smoke smell.  The chapel is a communal area used by inmates of many faiths.  In analyzing RLUIPA claims, a court must consider what burdens the religious accommodation places on third parties. <u>Cutter</u>, 125 S. Ct. at 2121.  The least restrictive means of accomplishing Defendants' interest in preventing discord among inmates caused by lingering smoke smells in the chapel is to prohibit smudging indoors.  Other courts have likewise concluded that prison policies prohibiting smudging indoors satisfy the strict scrutiny test under RLUIPA.  <u>See e.g.</u> <u>Skenandore v. Endicott</u>, No. 05-0234, 2006 WL 2587545, *13-14 (E.D. Wis. Sept. 6, 2006); <u>Smith v. Beauclair</u>, 03-222, 2006 WL 2348073, *9 (D. Idaho Aug. 11, 2006)

(holding prison policy prohibiting smudging in cells withstood strict scrutiny test under RLUIPA because of health effects of smoke exposure for other inmates).

### 3. Herbs

For purposes of this discussion, the Court will assume that Plaintiff has demonstrated that the policy limiting the number and amount of herbs Plaintiff may possess substantially burdens his religion. However, Plaintiff has not satisfied this test with regard to his need to use organic and kosher herbs. Plaintiff has not offered any statements or evidence regarding why it is necessary that the herbs used in his religious practice be organic. Therefore, to the extent Defendants seek summary judgment on the issue of Plaintiff's need to use organic herbs, the motion should be granted.

Defendants contend that the use and possession of herbs present a number of safety and security risks: herbs can be used to hide contraband; can be taken as a hallucinogenic; can be harmful to an inmate's health alone or in combination; and herbs can cause canine officers to falsely alert to drugs. The prison's purpose in limiting the number of approved herb vendors was to ensure the vendors were reputable and to lessen the possibility that contraband could enter the facility. Given the deference this Court must give to Defendants' judgments regarding prison policies, the Court concludes that Defendants have satisfied the compelling governmental interest prong of the strict scrutiny test.

The Court also concludes that Defendants' herb policy is the lease restrictive means of accomplishing Defendants' interests. Defendants surveyed inmates of different religions, including Wiccans, to determine which herbs would be allowed. Defendants ensured that the herbs selected would not pose health risks or medical concerns to inmates. Defendants made certain the approved vendors were reputable and selected six vendors. In all, the DOC spent

eight months studying and devising a plan that was the least restrictive means of accommodating prisoners' use of herbs in their religious practices.[7]  Because Defendants' herb policy satisfies the strict scrutiny test under RLUIPA, it is this Court's recommendation that Defendants' motion be granted.

### 4.  Prayer Oils

Plaintiff is not prohibited from using prayer oils to express his religion; he is only prohibited from keeping or using prayer oils in his cell.  Plaintiff has not made any argument as to why the inability to keep and use prayer oils in his cell substantially burdens his religion.  Because Plaintiff has not made this showing, it is this Court's recommendation that Defendants' motion for summary judgment be granted.

Even if Plaintiff had established that the prison's prayer oil policy substantially burdens his religion, limiting use of prayer oils to the chapel and prohibiting the use of oils in cells does not violate RLUIPA.  Plaintiff relies on Charles v. Verhagen, 220 F. Supp. 2d 937 (W.D. Wis. 2002)[8] for the proposition that prohibiting prayer oils in cells violates RLUIPA.  Verhagen is distinguishable, however.[9]  The defendants in Verhagen did not assert the same safety concerns raised by Defendants in this case.  Rather, in Verhagen, defendants had procedures that limited the number of religious items inmates could posses in their cells.  Id.  The court concluded that it

---

[7]    The Court also notes that there is no less restrictive limitation on the number of herbs an inmate could order that would satisfy the needs of all Wiccan or pagan inmates.  In response to the DOC survey, an outside Wiccan resource person, Penny Tupy, stated that there are approximately 6,000 herbs used by Wiccans alone or in combinations.  Tupy stated "[l]imiting the use of herbs to ten when there are hundreds of thousands would be theologically bankrupt." (Aff. of Anthony Mustazza, Ex. 3).

[8]    Plaintiff also cites to a later decision in Verhagen, 220 F. Supp. 2d 955 (W.D. Wis. 2002), which addressed the question of whether RLUIPA was unconstitutional and mentioned in *dicta*, the court's previous holding.  The opinion analyzing the legality of prayer oil bans under RLUIPA is found at 220 F. Supp. 2d 937.  Both decisions were affirmed by the Seventh Circuit. Charles v. Verhagen, 348 F.3d 601 (7th Cir. 2003).

[9]    Inexplicably, Defendants did not address Verhagen in their reply brief and made no effort to distinguish the case.

would be less burdensome on the inmates' religious rights to limit the overall amount of inmate property and to allow prisoners to sacrifice secular objects if they wished to possess additional religious items in their cells.  In contrast in this case, Defendants' prohibition on prayer oils in cells is not based on property limits, but rather safety concerns.  Defendants assert that prayer oils are not allowed in cells because oils can be used as a weapon to throw at correctional officers or other inmates.  Further, oils present a security risk with inmates selling or trading the oils.  (Aff. of John Hillyard at ¶ 13).  These safety and security concerns are compelling interests. The policy does not violate RLUIPA because allowing inmates to use prayer oils only in the chapel is the least restrictive means of furthering that interest.

### F.    **Equal Protection**

Plaintiff asserts that Defendants violated his equal protection rights because Wiccans are treated differently than other religious groups with respect to mail censorship and smudging. This Court disagrees.

Under the Fourteenth Amendment, a prison must treat similarly situated inmates alike. Murphy II, 372 F.3d at 984.  To succeed on a Fourteenth Amendment claim, the plaintiff must show:  (1) he or she was treated differently than a similarly situated class of inmates; (2) that the differential treatment burdens one of his or her fundamental rights or is based on a suspect classification; and (3) that the differential treatment bears no rational relation to any legitimate penal interest.  Id.; Patel, 515 F.3d at 816.  Religion is a suspect classification.  Patel, 515 F.3d at 816.  To succeed on an equal protection claim, an inmate must show not just that he was treated differently, but that the prison's actions were motivated by intentional or purposeful discrimination.  Id.; Lewis v. Jacks, 486 F.3d 1025, 1028 (8th Cir. 2007).  General allegations about other religious groups being treated more favorably are not sufficiently specific to support

an equal protection claim. <u>Runningbird v. Weber</u>, No. 05-3176, 198 Fed. Appx. 576, 578, 2006 WL 2466194, *2 (8th Cir. Aug. 28, 2006) (unpublished). This is because a prisoner cannot sustain an equal protection claim merely by alleging that he has been treated less favorably than other inmates; "he must show that his circumstances are the same as those of other inmates who purportedly received more favorable treatment." <u>Ahmed v. Fenesis</u>, No. 05-2388, 2007 WL 2746842, *10 (D. Minn. Sept. 19, 2007) (citing <u>Bogren v. Minnesota</u>, 236 F.3d 399, 408 (8th Cir. 2000)).

With respect to the censorship of Plaintiff's mail, Plaintiff alleges in his Complaint that "similar depictions in non-wiccan literature were not confiscated." (Complaint at ¶ 22, 32, 46). In Pl.'s Resp. to Reply, Plaintiff attached affidavits from other inmates regarding censorship. Stan Bolte testified that he had received magazines, Outdoor Life and National Geographic, that contained images of knives and images of nudity in "cultural settings" or museums. Mark Risk averred that he had received the Pioneer Press which contained ads depicting guns and knives and other hunting equipment. Neither Risk nor Bolte identified their religion in their affidavits. Affiant Joseph Zimmer stated that he was Lutheran, he occasionally received religious mail, and it was not censored. Affiant Samuel Larsen asserted that he was Catholic and his religious mail was not censored.

Plaintiff cannot survive summary judgment on his equal protection claim related to MCF-STW's mail policies because he has not established that he is similarly-situated to the inmates who provided affidavits. Bolte and Risk received the images at issue through subscription-mail. Subscription mail is not subject to MCF-STW's mail policies. Rather, subscription mail is subject to a DOC-wide centralized review policy. (Aff. of Mary Perez at ¶ 4). Subscription mail is reviewed and approved or denied through the centralized review system, not MCF-STW's

mail room.  (Id.).  In contrast, Plaintiff's censored mail was not a subscription magazine but was personal mail sent to him by his wife.  Nor has Plaintiff established he is similarly situated to Zimmer or Larsen.  While Zimmer and Larson made conclusory statements that their religious mail has never been censored, they did not aver that their religious mail ever contained pictures of knives or sexual explicit images.  Therefore, Zimmer and Larsen are not similarly situated to Plaintiff and his equal protection claim fails.

Likewise, Plaintiff's Complaint states that "Defendants' ban on religious indoor smudging and burning of incense **only applies** to Wiccan and Pagan practitioners."  (Complaint at ¶ 68) (emphasis in original).  In his brief in opposition to Defendants' motion for summary judgment, Plaintiff asserts Defendants "allowed other sanctioned religious groups to continue to smudge in another part of the prison."  (Memo. In Opp. To Defs.' Mot. For Summ. J. at 9, hereinafter "Pl.'s Memo.").  Plaintiff did not present any evidence to support these conclusory allegations.  Defendants, however, provided evidence that Native American Groups were entitled to smudge outdoors, just as Plaintiff and other Wiccans are able to smudge outdoors.  Because Plaintiff is treated the same as inmates of other religions, it is recommended that Defendant's motion for summary judgment be granted on Plaintiff's equal protection claim related to smudging.

### G.  <u>Conspiracy</u>

In order to establish the existence of a conspiracy to violate civil rights, a plaintiff must prove the defendants:  (1) conspired; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons, of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) that one or more of the conspirators took actions in furtherance of the conspiracy; and (4) resulting in an injury to the plaintiff's person or property

or depriving the plaintiff of having and exercising any right or privilege of a citizen of the United States. Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996) (citing City of Omaha Employees Betterment Ass'n v. City of Omaha, 883 F.2d 650, 652 (8th Cir. 1989)); see also Griffin v. Breckenridge, 403 U.S. 88, 102-03, 91 S. Ct. 1790, 1798-99, 29 L. Ed. 2d 338 (1971). To establish the "purpose" element of the conspiracy, the plaintiff must prove a class-based "invidiously discriminatory animus." City of Omaha, 883 F.2d at 652. The plaintiff must also specifically demonstrate with material facts that the defendants reached an agreement. Id. (citing Gometz v. Culwell, 850 F.2d 461, 464 (8th Cir. 1988)); Larson, 76 F.3d at 1454.

Other than the allegation that all of the civil rights violations he experienced occurred at the time John King became warden of MCF-STW, Plaintiff has not provided any evidence that Defendants reached an agreement to violate Plaintiff's constitutional rights. A mere showing that alleged civil rights violations occurred, at or around the same time as other rights violations, is insufficient to satisfy the elements required to establish a conspiracy. Martin v. Delaware Law School of Widener Univ., 625 F. Supp. 1288, 1297-98 (D. Del. 1985) (summarily affirmed at 884 F.2d 1384 (3d Cir. 1989) (table decision). Plaintiff has not provided any facts or evidence demonstrating Defendants reached any agreement or that they were motivated by discriminatory animus. As such, Plaintiff's conspiracy claim fails and the Court recommends Defendants' motion be granted.

### H. Cruel and Unusual Punishment

To prevail on an Eighth Amendment claim for cruel and unusual punishment in conditions of confinement, an inmate must show both a deprivation of "the minimal civilized measure of life's necessities" and that defendants were deliberately indifferent to excessive risks to the prisoner's health or safety. Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115

L.Ed.2d 271 (1991); <u>Key v. McKinney</u>, 176 F.3d 1083, 1086 (8th Cir. 1999).  A defendant's motion for summary judgment should be denied on the issue of deliberate indifference if the prisoner demonstrates prison officials were subjectively aware of an obvious risk to the prisoner, and disregarded that risk. <u>Farmer v. Brennan</u>, 511 U.S. 825, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994).  The Eighth Circuit has held that mere deprivation of access to religious services does not violate the Eighth Amendment because it does not "inflict unnecessary or wanton inflictions of pain, nor [does it] involve 'life's necessities,' such as water, food, or shelter."  <u>Phillips v. Norris</u>, 320 F.3d 844, 848 (8th Cir. 2003) (holding thirty-seven day isolation without contact visitation or religious services did not violate Eighth Amendment.).

Unlike the plaintiff in <u>Phillips</u>, in this case Plaintiff has not been denied access to *any* religious services; rather he has only been denied access to certain tools or methods of practicing his religion.  Plaintiff was not subjected to any physical pain or injury and was not denied any of "life's necessities."  Given the Eighth Circuit's holding held that a complete denial of access to religious services for an extended period does not violate the Eighth Amendment, this Court cannot say that the religious deprivations Plaintiff suffered amounted to cruel and unusual punishment.  It is this Court's recommendation that Defendants' motion for summary judgment on Plaintiff's Eighth Amendment claims be granted.

## III.    RECOMMENDATION

Based upon the above, and upon all the files, records, and proceedings herein, **IT IS RECOMMENDED** that:

1.  Defendants' Motion for Summary Judgment [Docket No. 11] be **GRANTED**;

2.  Plaintiff's Motion to Deny Summary Judgment [Docket No. 33] be **DENIED**.

Dated:  August 18, 2009                    _s/ Susan Richard Nelson_____
                                           SUSAN RICHARD NELSON
                                           United States Magistrate Judge


Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **September 2, 2009** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.   Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.